IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 11-cv-03144-WYD-CBS

MOLYCORP MINERALS, LLC,

    Plaintiff / Counter Defendant,

v.

HALOSOURCE, INC.,

    Defendant / Counter Claimant.

_____

**ORDER**
_____

    THIS MATTER is before the Court on plaintiff, Molycorp Minerals, LLC's Motion To Dismiss HaloSource, Inc.'s Counterclaims Pursuant To Fed. R. Civ. P. 12(b)(6) [ECF No. 33]. For the reasons discussed below, the motion is DENIED.

**BACKGROUND**

    On December 2, 2011, Molycorp Minerals, LLC filed this suit against HaloSource, Inc. seeking a declaratory judgment and alleging claims for breach of contract, fraudulent representation, and misappropriation, in connection with the parties' investigation and research of water purification technology. Molycorp is a rare earth products producer and develops, improves, and refines applications for rare earth products, including water purification. HaloSource develops water purification products as well.

    In the Fall of 2009, Molycorp and HaloSource engaged in discussions regarding the possibility of HaloSource's use of XSORBX, a Molycorp-developed commercial

water treatment technology. XSORBX is allegedly an extremely versatile and effective water treatment medium that extends to a broad variety of contaminants including protozoa, fungi, bacteria, viruses, pesticides, toxic metals, and other contaminants. In November of 2009, the parties entered into an agreement ("the 2009 Agreement") in which Molycorp would supply HaloSource with confidential information regarding water purification technology, specifically XSORBX. The 2009 Agreement includes sections governing, *inter alia*, the non-disclosure of Molycorp's technology, use of Molycorp's technology, and the return or destruction of Molycorp's confidential information. On June 11, 2010, HaloSource filed a provisional application for patent, no. 61/353,942 ("the 942 Application"), with the United States Patent and Trademark Office ("USPTO"), which allegedly contains information protected under the 2009 Agreement.

On June 21, 2010, the parties entered into a second confidentiality agreement ("the 2010 Agreement"). This agreement provides more protection for both Molycorp's proprietary rare earth technology and for HaloSource's halogen-based polymeric compounds. The 2010 Agreement defines Molycorp's contaminant treatment technology as "Molycorp's Contaminant Treatment Technology," and defines HaloSource's contaminant treatment technology as "Company Contaminant Treatment Technology." The 2010 Agreement, *inter alia*, requires HaloSource to: (1) warrant that it is not actively pursuing, developing, and does not possess Molycorp Contaminant Treatment Technology; (2) use reasonable efforts and diligence to safeguard Molycorp's confidential information; and, (3) refrain from disclosing any confidential information provided to it under the 2010 Agreement for a period of ten years. The 2010 Agreement also contains a provision which declares that HaloSource expressly

assigns to Molycorp all rights it has or may have in background information, improvements, and protectable intellectual property relating to Molycorp's Contaminant Treatment Technology. On July 6, 2010, HaloSource filed a non-provisional utility application for patent, no. 12/830,949 ("the 949 Application"), with the USPTO. HaloSource also filed an international application, no. PCT/US2010/041107 ("the 107 Application"), with the USPTO. Both applications allegedly reveal confidential information protected by the 2010 Agreement.

On December 20, 2010, Molycorp sent written notice to HaloSource that it was terminating the parties' business relationship. On February 11, 2011, Molycorp requested in writing that HaloSource return or destroy all confidential information disclosed pursuant to their prior business relationship. On April 13, 2011, Molycorp filed a non-provisional patent application, no. 13/086,247 ("the 247 Application"), with the USPTO. HaloSource alleges that the 247 Application discloses information protected by the 2010 Agreement, specifically, HaloSource's Company Contaminant Treatment Technology.

On December 2, 2011, Molycorp filed this lawsuit against HaloSource seeking a declaratory judgment stating that it is the true, proper, and only owner of the subject matter and inventions set forth in the 942, 949, and 107 Application, as well as other patent applications containing similar information. Molycorp also alleges the following claims: (1) breach of contract, of both the 2009 and 2010 Agreement; (2) fraudulent representation; and, (3) misappropriation. In its Amended Answer [ECF No. 32], HaloSource asserts two counterclaims against Molycorp: breach of the 2010 Agreement and fraudulent representation. Included in HaloSource's Amended Answer

is a request for a declaratory judgment stating that it is the true, proper, and only owner of the subject matter and inventions set forth in the 247 Application, as well as other patent applications containing similar information. On April 30, 2012, Molycorp filed a Motion To Dismiss HaloSource, Inc.'s Counterclaims Pursuant To Fed. R. Civ. P. 12(b)(6) [ECF No. 33]. Molycorp argues that because the 247 Application does not contain HaloSource Company Contaminant Treatment Technology, HaloSource's counterclaims should be dismissed and HaloSource is not entitled to a declaratory judgment stating that it is the owner of the information included in the 247 Application.

## ANALYSIS

### A. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6) of the FEDERAL RULES of CIVIL PROCEDURE

FED. R. CIV. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2007).

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I "must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997)(citations omitted). The plaintiff

"must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *see also Twombly*, 550 U.S. at 546 (2007) (The plaintiff's burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). General allegations "encompass[ing] a wide swath of conduct, much of it innocent" will fail to state a claim. *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

### 1. HaloSource's Breach of Contract Counterclaim

HaloSource alleges that Molycorp breached the 2010 Agreement by filing the 247 Application because the application contains HaloSource Company Contaminant Treatment Technology, background information, improvements, and protectable intellectual property, which are all protected by the 2010 Agreement. In order prevail on its breach of contract counterclaim, HaloSource must prove: (1) the existence of a contract; (2) it performed in accordance with the contract or was justified in not performing; (3) Molycorp failed to perform in accordance with the contract's terms; and, (4) it suffered damages as a result of Molycorp's failure to perform. *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1170-71 (10th Cir. 2008) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

#### a. Existence of a Contract

HaloSource alleges in its breach of contract counterclaim that it "maintains that the 2010 Agreement is neither valid nor enforceable." ECF No. 32, p. 19, n.2. Thus,

HaloSource openly denies the existence of a contract, with respect to the 2010 Agreement.  HaloSource goes on to argue in the alternative that if the 2010 Agreement is valid and enforceable, Molycorp breached the agreement by filing the 247 Application.

The existence of a contract is central to any breach of contract claim.  There can be no breach if there is no contract.  I will not rule on the validity HaloSource's breach of contract counterclaim because that would involve a determination of whether the 2010 Agreement is valid and enforceable.  At this stage of the proceeding, a determination as to the 2010 Agreement's validity and enforceability is premature, not squarely before the Court, and has not been fully briefed by the parties.  Therefore, Molycorp's Motion to Dismiss HaloSource's breach of contract counterclaim is DENIED.

**2. HaloSource's Fraudulent Representation Counterclaim**

In order to prevail on a Colorado state law claim for fraudulent representation, a plaintiff must prove that:  (1) the defendant made a fraudulent misrepresentation of material fact; (2) at the time the defendant made the representation, he knew the representation was false or was aware that he did not know whether the representation was true or false; (3) he relied on the defendant's misrepresentation; (4) he had the right to rely on, or was justified in relying on the defendant's misrepresentation; and, (5) his reliance on defendant's misrepresentation resulted in him suffering damage. *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010) (citations omitted).

HaloSource alleges that by signing the 2010 Agreement, Molycorp fraudulently represented and warranted that it did not possess any HaloSource Company Contaminant Treatment Technology.  Section 4.1 of the 2010 Agreement states, in

pertinent part, that "[a]s of the Effective Date, Molycorp represents and warrants that it has no Company Contaminant Treatment Technology, and [HaloSource] represents and warrants that it has no Molycorp Contaminant Treatment Technology." ECF No. 1-2, p. 3.  HaloSource alleges that Molycorp did in fact possess Company Contaminant Treatment Technology and disclosed such protected information when it applied for the 247 Application.  HaloSource further alleges that:  (1) Molycorp signed the 2010 Agreement knowing that it possessed HaloSource Company Contaminant Treatment Technology, in violation of Section 4.1 of the 2010 Agreement; (2) it was ignorant of the falsity of Molycorp's representation that it did not possess HaloSource Company Contaminant Treatment Technology; (3) it justifiably relied on Molycorp's representation; and, (4) it suffered damages as a result of Molycorp's representation, including but not limited to commercial harm, diminution in value of HaloSource's Company Contaminant Treatment Technology, lost business opportunities, and diminution in reputation.  Taking these allegations as true, as I must at this stage of the proceedings, I find that HaloSource sufficiently alleges a claim for fraudulent representation.  Therefore, Molycorp's Motion to Dismiss HaloSource's fraudulent representation counterclaim is DENIED.

## B. HaloSource's Request for a Declaratory Judgment

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, HaloSource seeks a judgment declaring that it is "the true, proper, and only owner of the subject matter and inventions set forth in the '247 Application, as well as other patent applications containing this information or taking priority to this application filed by or on behalf of Molycorp." ECF No. 32, p. 26, ¶ 46.  Section 2201 states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [26 USCS § 7428], a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [19 USCS § 1516a(f)(10)]), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

The Declaratory Judgment Act "was an authorization, not a command. It gave federal district courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). A party seeking a declaratory judgment "must overcome two hurdles." *Marlin Oil Corp. v. Lurie*, 417 Fed. Appx. 740, 745 (10th Cir. 2011). First, there must be an actual controversy. *Id.* If the Court determines an actual controversy exists, the Court then "considers several case-specific factors to decide whether to exercise its declaratory judgment authority." *Id.* (citation omitted). When determining whether to exercise its declaratory judgment authority, a Court should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata;* [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980-81 (10th Cir. 2012) (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

HaloSource's request for declaratory judgment regarding the 247 Application is based on the definitions of Molycorp's and HaloSource's Contaminant Treatment Technology found in the 2010 Agreement. HaloSource alleges that it is "a person whose rights, status, or other legal relations are **affected by a written contract** who seeks to have determined a question of construction under the instruments and to obtain a declaration of rights, status or other legal relations." ECF No. 32, pp. 25-26, ¶ 45 (emphasis added). The "written contract" that HaloSource refers to in paragraph 45 is the 2010 Agreement. Thus, an analysis to determine the owner of the information included in the 247 Application would begin with the 2010 Agreement. As stated previously, it is premature at this stage of the proceeding to determine the validity and enforceability of the 2010 Agreement because that issue is not squarely before the Court and the parties have not fully briefed the issue. Therefore, pursuant to the discretion afford me by the Declaratory Judgment Act, I decline to issue a declaration of rights regarding the 247 Application at this time. *Pub. Affairs Assoc., Inc.*, 369 U.S. at 112; *Mid-Continent Cas. Co.*, 685 F.3d at 980.

## CONCLUSION

After careful consideration of the matters before this Court, it is

ORDERED that Molycorp Minerals, LLC's Motion To Dismiss HaloSource, Inc.'s Counterclaims Pursuant To Fed. R. Civ. P. 12(b)(6) [ECF No. 33], is **DENIED**.[1] It is

---

[1] This ruling does not preclude Molycorp from challenging HaloSource's breach of contract counterclaim at a later date.

FURTHER ORDERED that pursuant to the discretion afford me by the Declaratory Judgment Act, 28 U.S.C. § 2201, I decline to issue a declaration of rights regarding the 247 Application at this time.[2]

Dated: March 28, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge

---

[2] This ruling does not preclude HaloSource from requesting a declaration of rights regarding the 247 Application at a later date.